

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-15-00221-CR

---

RICHARD TURNER, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 13F0329-102

---

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

## MEMORANDUM OPINION

In a single jury trial, Richard Turner was convicted of aggravated assault with a deadly weapon[1] and burglary of a habitation with intent to commit aggravated assault.[2] Turner was sentenced to five years' incarceration as a result of the conviction of aggravated assault, and that sentence was ordered to run concurrently with the twenty-five-year sentence for his burglary conviction. In this appeal of his aggravated assault conviction, Turner complains, among other things, that his conviction violates the double-jeopardy protections found in the Fifth Amendment to the United States Constitution. U.S. CONST. amend. V. We affirm the trial court's judgment.

Turner was arrested and charged with various forms of assault. Count one of the indictment recited that Turner "intentionally, knowingly, or recklessly cause[d] serious bodily injury to Amy Turner by beating and kicking Amy Turner," that Turner used or exhibited a firearm during the commission of the assault, and that "Amy Turner was a member of the defendant's family, as described by Section 71.003 Family Code." Count one alleges a first degree felony aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02(b)(1). Count two of the indictment recited that Turner "intentionally, knowingly, or recklessly cause[d] bodily injury to Amy Turner by beating and kicking [her]" and that Turner used or exhibited a firearm during the commission of the assault. The final paragraph of the indictment recited that Turner "intentionally or knowingly threaten[ed]

---

[1]*See* TEX. PENAL CODE ANN. § 22.02 (West 2011). The judgment reads that defendant was convicted of the offense of "aggravated assault-SBI-FV-DW." We interpret this to mean aggravated assault causing serious bodily injury to a family member with a deadly weapon. This is a first degree felony offense. *See* TEX. PENAL CODE ANN. § 22.02(b)(1).

[2]Turner filed separate appeals of his two convictions. Each conviction stems from a separate indictment. Our opinion in Turner's companion appeal, styled *Richard Turner v. The State of Texas*, cause number 06-15-00220-CR, is issued of even date herewith.

Amy Turner, with imminent bodily injury by displaying a firearm and" that "he threatened to kill [her]," all while using or exhibiting a firearm. The jury convicted Turner of aggravated assault with a deadly weapon. Both paragraphs of count two of the indictment allege second degree felony offenses. *See* TEX. PENAL CODE ANN. § 22.02(a), (b).

## I. Double Jeopardy

### A. Acquittal Judgment for Aggravated Assault with a Deadly Weapon Does Not Implicate Double-Jeopardy Protections

An evaluation of the double-jeopardy issue initially requires us to determine the offense of which Turner was actually convicted. Notwithstanding the language of count one of the indictment, detailed above, the jury verdict form signed by the presiding juror stated, "We the jury find the defendant, RICHARD TURNER, guilty of Aggravated Assault with a Deadly Weapon." Although Turner and Amy were married at the time of the offense, the jury was not instructed on the definition of "serious bodily injury," and their verdict indicates that the assault was aggravated solely due to the use or exhibition of a deadly weapon during the commission of the assault.[3] The jury was not asked to answer the questions of whether the assault caused serious bodily injury *and*

---

[3]The court's charge instructed the jury that Turner stood "charged by indictment in cause number 13F0329-102 with the felony offense of Aggravated assault with a Deadly Weapon." The jury was further instructed that "a person commits an assault if the person intentionally, knowingly or recklessly causes bodily injury to another, including the person's spouse." Further, the jury was told that "[a] person commits aggravated assault if the person commits an assault, as defined above, and causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault." While "bodily injury" was defined in the court's charge, the charge failed to define "serious bodily injury." Finally, the jury was instructed,

> If you find from the evidence beyond a reasonable doubt that on or about May 2, 2013, in Bowie County, Texas, defendant, RICHARD TURNER, did unlawfully then and there intentionally, knowingly or recklessly cause bodily injury to Amy Turner by beating and kicking Amy Turner, and the defendant did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault then you will find the defendant guilty of Aggravated Assault with a Deadly Weapon as charged in the indictment in cause number 13F0329-102.

whether Turner used a deadly weapon during the commission of the assault. *See* TEX. PENAL CODE ANN. § 22.02(b)(1). Finally, the trial court instructed the jury that aggravated assault with a deadly weapon is a second degree felony and further instructed the jury to "assess the defendant's punishment for aggravated assault with a deadly weapon at confinement . . . for a term of not more than 20 years and not less than two years." It, therefore, appears that the trial court's judgment, listing the offense to include family violence and serious bodily injury, is incorrect and will thus require modification.

With Turner having been convicted by the jury of aggravated assault with a deadly weapon, on September 18, 2015, the trial court pronounced sentence and entered a judgment of conviction against Turner for aggravated assault with a deadly weapon. It likewise entered a judgment of acquittal by jury, acquitting Turner of the charge of aggravated assault with a deadly weapon. Both judgments were entered on September 18, 2015, the judgment of conviction under count one was signed by the trial court on October 6, 2015, and the judgment of acquittal under count two was signed on October 9, 2015.

Turner claims that the judgment acquitting him of aggravated assault under Section 22.02(a)(2) of the Penal Code invalidates his conviction under Section 22.02(b)(1) of the Penal Code because the offense of which he was convicted could not be proven unless all elements of aggravated assault with a deadly weapon under Section 22.02(a)(2) were likewise proven. Because Turner claims he was acquitted of aggravated assault with a deadly weapon, he contends that the Double Jeopardy Clause bars his conviction of the greater offense of which he was convicted under Section 22.02(b)(1). *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(1).

4

This argument is factually inaccurate. Turner was convicted of aggravated assault with a deadly weapon under Section 22.02(a)(2) of the Penal Code, and as previously mentioned, the offense of which Turner was convicted and the degree of that offense, as recited in the judgment of conviction, are incorrect. *See* TEX. PENAL CODE ANN. § 22.02(a)(2). Therefore, the proper issue we must decide is whether Turner presents a valid double-jeopardy claim in light of the fact that he was both convicted of, and ostensibly acquitted for, the same offense. We conclude that such a claim cannot stand.

The Double Jeopardy Clause states, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . ." U.S. CONST. amend. V. "Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that '(a) [sic] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting (a defendant) [sic] twice in jeopardy, and thereby violating the Constitution.'" *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571 (1977) (alterations in original) (quoting *Ball v. United States*, 163 U.S. 662, 671 (1896)). Here, however, Turner seeks to utilize this protection as a sword rather than a shield, essentially claiming that after a jury verdict of guilt was entered against him, the subsequent judgment of acquittal eviscerated his conviction. This reasoning must fail. "[W]hat constitutes an 'acquittal' is not to be controlled by the form of the judge's action." *Id.* (citing *United States v. Sisson*, 399 U.S. 267 (1970)). Instead, "the ruling of the judge, whatever its label," must represent "a resolution, correct or not, of some or all of the factual elements of the offense charged." *Id.* The judgment of acquittal at issue does not meet that test.

Although Turner was charged with two crimes by indictment, the court's charge only presented the jury with the option of finding Turner guilty of (1) aggravated assault with a deadly weapon or (2) assault. The jury found Turner guilty of aggravated assault with a deadly weapon. After the presentation of the evidence at trial, the jury returned to the courtroom with its verdict. The jury foreman informed the trial court that the jury's verdict was unanimous.

The trial court then announced the verdict in open court on September 17, 2015, by reading, "We, the jury, find the defendant, Richard Turner, guilty of aggravated assault with a deadly weapon in Cause No. 13F329-102, and, again, it's signed by the presiding juror." The trial court then informed the jury that the guilt/innocence phase of the trial was concluded and recessed the jury. Following the punishment phase of the trial, the trial court entered two written judgments. The judgment of conviction of aggravated assault with a deadly weapon memorialized the jury's sole verdict in this case. Consequently, the trial court's judgment of acquittal of the charge of aggravated assault with a deadly weapon is improper because it failed to memorialize any verdict of the jury.

It is also true that Turner stood convicted of the offense of aggravated assault with a deadly weapon before the acquittal judgment was rendered. Turner was convicted when the jury found him guilty, the verdict was announced in open court, and the guilt phase of the trial concluded. The actual judgment of conviction merely memorialized the jury's verdict of guilt. *See, e.g.*, *Dunn v. State*, 176 S.W.3d 880, 885 (Tex. App.—Fort Worth 2005, no pet.) (court may not receive verdict in criminal trial and enter judgment different from that called for by jury verdict); *Chafin*

6

*v. State*, 95 S.W.3d 549, 555 (Tex. App.—Austin 2002, no pet.) (trial court may not enter a different judgment from that called for by verdict).

Turner, nevertheless, relies on *Fong Foo v. United States*, 369 U.S. 141 (1962) (per curiam), in which the trial court directed a verdict of acquittal before the prosecution finished presenting its evidence. *Id.* at 142. While the trial court's action was recognized as "egregiously erroneous," the Supreme Court determined that the Double Jeopardy Clause prohibited the court of appeals from setting aside the verdict of acquittal and subjecting the defendant to another trial. *Id.* at 143. In that case, however, the judgment, although erroneous, resolved some, if not all, of the factual elements of the offense charged, and the judgment of acquittal was the sole judgment.

Here, the offense for which Turner was tried and of which he was convicted is aggravated assault with a deadly weapon. By its verdict, the jury, by definition, found Turner guilty of that offense. The trial court's entry of the judgment of acquittal is more akin to a clerical error than a judgment based on an erroneous foundation, as was the case in *Fong Foo*. Turner's reliance on *Fong Foo* is therefore misplaced.

Further, Turner's argument does not implicate the rights protected by the Double Jeopardy Clause. "The constitutional prohibition of double jeopardy has been held to consist of three separate guarantees: (1) 'It protects against a second prosecution for the same offense after acquittal. [(2) I]t protects against a second prosecution for the same offense after conviction. [(3)] And it protects against multiple punishments for the same offense.'" *Illinois v. Vitale*, 447 U.S. 410 (1980) (alterations in original) (quoting *N. Carolina v. Pearce*, 395 U.S. 711, 717 (1969), *overruled in part by Alabama v. Smith*, 490 U.S. 794 (1989) (footnotes omitted)); *see Ex parte*

7

*Broxton*, 888 S.W.2d 23, 25 (Tex. Crim. App. 1994). Because this case does not involve a second prosecution for the same offense after acquittal, that double-jeopardy protection does not help Turner. There was but one prosecution in this case, and Turner was convicted. Turner does not claim that, due to the trial court's judgment of acquittal, he is subject to a second prosecution for the same offense after conviction.[4]

Finally, the prohibition of double jeopardy protects against multiple punishments for the same offense. Although Turner claims such protection in a different point of error, this protection does not aid his argument that the judgment of acquittal, entered after conviction, essentially eviscerates his conviction of aggravated assault with a deadly weapon. Turner has failed to demonstrate any violation of the Double Jeopardy Clause, and we overrule this point of error.

### B.       No Multiple-Punishment Double-Jeopardy Violation

In a single jury trial, Turner was convicted of burglary of a habitation with intent to commit aggravated assault and of aggravated assault with a deadly weapon. Amy was the victim of both offenses. Turner contends that these dual convictions, for offenses committed against the same victim, amount to a double-jeopardy violation because he has suffered two punishments for the same offense.

We addressed this issue in detail in our opinion of this date in Turner's companion appeal in cause number 06-15-00220-CR. For the reasons stated therein, we likewise conclude that error has not been shown in this matter. We overrule this point of error.

---

[4]Turner does not contend that the evidence is legally insufficient to support the jury's verdict of conviction.

**III.    Turner did not Receive Ineffective Assistance of Counsel**

**A.    Uncounseled Misdemeanor Conviction**

During the course of the punishment trial, the State introduced, without objection, a misdemeanor probation order entered in 1988 (probation order) resulting from Turner's guilty plea to the charge of driving while intoxicated (DWI). The order indicates that Turner was not represented by counsel when he entered his guilty plea. It further indicates that Turner waived a jury trial and submitted the cause to the court.[5] A waiver of the right to counsel does not appear on the face of the order. Turner claims that his counsel was ineffective in failing to object to the introduction of the uncounseled probation order.[6]

As in our opinion in cause number 06-15-00220-CR, and for the reasons articulated in that opinion, we conclude that counsel's failure to seek to exclude evidence of the uncounseled probation order during the punishment phase of the trial was arguably deficient. Yet, even assuming counsel's performance was deficient, however, we cannot conclude that Turner was prejudiced by that performance under the second prong of *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

General factors to be considered in the evaluation of "whether a defendant has established *Strickland* prejudice during the punishment phase of non-capital cases as a result of deficient

---

[5]Turner was sentenced to sixty days' confinement in the Bowie County Jail. The sentence was suspended, and Turner was placed on probation for a period of two years.

[6]Turner's appellate argument primarily focuses on whether counsel was ineffective in failing to object to the uncounseled probation order as it relates to his conviction of, and sentence for, the crime of burglary of a habitation with intent to commit aggravated assault. Because Turner was tried in a single trial for both the burglary charge and the charge of aggravated assault with a deadly weapon, we interpret his appellate brief as claiming ineffective assistance of counsel with respect to both matters.

9

attorney performance of any kind" include whether the defendant received the maximum sentence, any disparity between the sentence imposed and the sentence requested by the respective parties, the nature of the offense charged and the strength of the evidence presented at trial, the egregiousness of the error, and the defendant's criminal history. *Lampkin v. State*, 470 S.W.3d 876, 922 (Tex. App.—Texarkana 2015, pet. ref'd).

Here, Turner was sentenced to five years' confinement for his conviction of aggravated assault with a deadly weapon. Neither the State nor Turner's counsel argued for any particular sentence. This sentence is significantly less than the twenty-year sentence Turner could have received for his conviction of aggravated assault with a deadly weapon. Although Turner threatened Amy with a gun and ultimately held a gun to her head, he received a sentence on the low end of the sentencing range for this violent crime. The State developed the evidence of the commission of this crime at trial, and that evidence was strong. The evidence included testimony from the victim, Amy.

Amy explained that, after she had been married to Turner for fifteen years, she moved out of the marital home and rented an apartment at the Krystal Plex Apartments. On May 2, 2013, she met Turner at a local restaurant at his request. Turner informed Amy that he was sick and that the doctor believed he had cancer. Amy agreed to Turner's request that she return home. Amy did not, however, go to Turner's house after she left the restaurant. Instead, she returned to her apartment and locked the door. While in the bedroom, Amy heard banging and loud yelling. Turner had kicked the apartment door in and entered Amy's home. Turner immediately began to hit and kick Amy and then straddled her and hit her in the head. He then pushed Amy down the

stairs while cursing and screaming at her.  Amy attempted to get in her car, and Turner pushed her to the ground.  She was finally able to get in her car and flee the scene.

Turner followed Amy as she fled in her vehicle, and he began ramming her car with his truck.  She was forced to pull over on the side of the interstate when her car began filling with smoke.  Turner then forced Amy into his truck and drove to the Red River Bridge.  He parked underneath the bridge where he continued to hit Amy in the face and head.  Turner then pulled out a gun, placed it on the console, and told Amy that, if she tried to run, he would hurt her.  Turner then directed Amy to call 9-1-1 to report that her apartment had been broken into and that her car had been stolen.

Thereafter, Turner drove Amy to his home in Hooks, where he continued to beat her and finally put a gun to her head.  At that point, Turner began receiving text messages from a co-worker, asking him what was going on.  Turner's girlfriend arrived, after Turner contacted her, and drove Turner and Amy to Amy's apartment.  When they arrived at the apartment, the police were there, and Turner let Amy out of the car.  Amy's forehead was swollen, both eyes were blackened, she had a dent on the top of her head, her arms and stomach were bruised, and her lip was bleeding.

Turner's five-year sentence for the second degree felony offense of aggravated assault with a deadly weapon weighs in favor of a lack of prejudice. The strength of the evidence presented at trial likewise weighs in favor of a finding of no prejudice.

The egregiousness of the error is another factor we must weigh.  This factor is measured by "the relationship between the amount of effort and resources necessary to have prevented the

11

error as compared to the potential harm from that error." *Lampkin*, 470 S.W.3d at 919. Here, it would have been a simple task for defense counsel to examine the probation order to determine that Turner was evidently not represented by counsel at the hearing resulting in his DWI conviction. The potential harm from that error, however, appears to have been minimal, at most. Turner freely admitted to his three DWI convictions, and the State only briefly mentioned those convictions in closing argument,[7] choosing instead to focus on Turner's denial of having abused Amy and thus refusing to take responsibility for his actions. Throughout the trial, the State focused on the charged offense of burglary of a habitation with intent to commit aggravated assault and placed little emphasis on the aggravated assault with a deadly weapon offense. This factor also weighs in favor of a finding of no prejudice.

Because these factors weigh in favor of a finding of no prejudice, we cannot say that there is a reasonable probability that the assessment of punishment would have been less severe in the absence of defense counsel's arguably deficient performance. *See Wiggins*, 539 U.S. at 534. Accordingly, we overrule this point of error.

### B.      Failure to Voir Dire on Punishment

Turner's final claim of ineffective assistance of counsel rests on his assertion that defense counsel failed to voir dire the jury on punishment.

---

[7]The State told the jury, "[Y]ou learned about his three DWI convictions." While the State spoke a bit more extensively about the DWI convictions in its opening statement, Turner's appellate argument does not articulate what harm could have resulted from those statements as it relates to his sentence for the offense of aggravated assault with a deadly weapon, and we do not discern any such harm from the appellate record.

We addressed this issue in detail in our opinion of this date in Turner's companion appeal in cause number 06-15-00220-CR. For the reasons stated therein, we likewise conclude that error has not been shown in this matter. Accordingly, we overrule this point of error.

## IV.     Modification of Judgment

As explained earlier in this opinion, although Turner was convicted of aggravated assault with a deadly weapon, the judgment of conviction erroneously states that the offense of which Turner was convicted was "aggravated assault-SBI-FV-DW." The degree of offense listed in the judgment is a first degree felony. In fact, the record reflects that Turner was convicted of aggravated assault with a deadly weapon, a second degree felony. *See* TEX. PENAL CODE ANN. § 22.02(a), (b).

We have the authority to modify the judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *see* TEX. R. APP. P. 43.2(b). Therefore, we modify the trial court's judgment to reflect that Turner was convicted of aggravated assault with a deadly weapon and to reflect that this is a second degree felony offense.

## V.     Conclusion

We affirm the trial court's judgment, as modified.


Ralph K. Burgess
Justice

Date Submitted:       August 25, 2016
Date Decided:         December 2, 2016

Do Not Publish